JOHN McBRIDE - 36458
WYLIE, McBRIDE, JESINGER, SURE & PLATTEN
2125 Canoas Garden Avenue, Suite 120
San Jose, California 95125
Telephone: (408) 979-2920
Facsimile: (408) 979-2934

Attorneys for Plaintiff
LISA CLARK

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| LISA CLARK,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>UNITED EMERGENCY ANIMAL CLINIC, INC. and DOES 1 through 10, inclusive,<br><br>　　　　Defendant. | Case No. C-01-20563 JF<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: September 9, 2002<br>Time: 9:00 a.m.<br>Court: 5th Floor, Ctrm: 3<br>Judge: Honorable Jeremy Fogel<br>Trial Date: September 9, 2002 |

### A.     INTRODUCTION

Plaintiff, a licensed veterinarian, was employed by defendant at its emergency clinic in Campbell, California.

Plaintiff and the other regular veterinarians typically were scheduled to and did work shifts of 12 or more hours and many weeks a year would work in excess of 40 hours a week.

The regular veterinarian pay was calculated by a formula which set the pay per shift worked. Each month plaintiff and other co-workers would be paid an amount determined by multiplying the number of shifts worked by that individual in the preceding month time the per shift pay calculated by the formula. Thus, if plaintiff worked 10 shifts in the preceding month she would be paid for 10 times the shift pay. Conversely, if she worked no shifts she would be paid nothing. Clark

Declaration ¶2. Although, defendant instituted an advance on pay system – the pay to which the employees were entitled was always based on the shifts worked. Also, if a veterinarian worked less than a full shift the pay would be proportionately reduced. Clark Declaration ¶3&5; Nixon Deposition, pgs. 38:13-39:26.

Although there was an advance pay system there was no guaranteed salary or pay in 1998 or 1999. McBride Declaration, Exh. 1, Nixon's Deposition, pgs 34:25-35:19 . Although defendant's Executive Director alleges that on January 1, 2000 she formed an "intent" to guarantee that each veterinarian would receive a guaranteed minimum pay per month, this was not communicated to any of the employees. Nixon Deposition, pgs 34:25-37:16; 40. In fact, Ms. Nixon indicated that there is no written document which indicates or refers to this secret guarantee. Nixon Deposition, pgs 40:9-42:17; McBride Declaration, Exhs. 2 & 3.

In 2001, defendant instituted a minimum salary guarantee. McBride Declaration, Exhs. 2 & 3. Since plaintiff's claim is for overtime only up through June of 2000, this guarantee has no bearing on plaintiff's claims.

Weekend shifts were for 12 hours, but typically plaintiff would be required to put in at least an extra hour. Week day shifts were scheduled for 14 hours, but also typically ran at least at half hour or more.

## B. ISSUES PRESENTED

### A. Fair Labor Standards Act Requires Premium for Work in Excess of 40 hours a week.

The Fair Labor Standards Act (FLSA) 29 USC §201 et seq. requires that non exempt employees be compensated at the rate of time and one half for all hours worked in a week over 40 hours. (29 USC §207) There are exceptions to the overtime requirements, but these must be narrowly construed and not applied except as to employees "plainly and unmistakenly within their terms and spirit". *Arnold v. Ben Kanowsky Inc.*, 361 US 388, 392 (1960); *Corning Glass Works v. Brennan,* 417 US 188, 197(1974); *Abshire v. County of Kern,* 908 F2d 483, 485-486 (9th Cir 1990).

The burden is on the employer to prove the employee is exempt. *Klem v. County of Santa Clara,* 208 F.3d 1085 (9th Cir 2000).

Pursuant to the authority granted to it, the Wages and Hours Division of the Department of Labor has issued regulations further defining the exemption statutes. Defendant claims that plaintiff is exempt because she was employed in a professional capacity, as that term is defined in one of these regulations. (29 CFR 541.3) This regulation (as it pertains to plaintiff) defines working in a professional capacity as work requiring knowledge of an advanced type in a field of science, which requires exercise of discretion and judgment and which is predominantly intellectual. 29 CFR 541.3(a)(b) and (c).

Plaintiff does not dispute that her work as a veterinarian fits within the terms of 29 CFR 541.3(a)(b) and (c); however, the regulation further requires that to fit within the professional capacity exemption the employee must be paid on a salary or fee basis. 29 CFR 541.3(d) Plaintiff was not paid a set salary nor was she paid on a fee basis. Her compensation depended solely on the number of shifts (i.e hours) she worked in a given pay period. She was guaranteed no minimum or set salary.

29 CFR 541.118(a) provides:

> The salary basis: An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

Defendant's method of compensating the shift veterinarians does not meet this salary basis because there was no set, predetermined, amount and because when a veterinarian missed part of a shift the pay for that shift was proportionately reduced.

Plaintiff was not entitled to any set guaranteed or predetermined amount. She was only paid for the number of shifts she worked, and if she worked less than a full shift her pay would be reduced. Further, under the formula used by defendant the pay per shift would vary from pay period to pay period depending upon the amount of defendant's profits. Therefore defendant's method of

compensating its veterinarians fails to come within the salary test. See *Martin v. Malcon Pirnie Inc.*, 947 F2d 11 (2d Cir 1991) (Engineers, architects, scientists and accountants found non-exempt and entitled to overtime due to salary test violation). Defendant's compensation plan fails the salary test for another separate reason. To qualify as being salaried an employer may not reduce salary for time not worked except when the time lost was a work week (or more). 29 CFR 541.118(a)(2)(3).

The regulation also provides that the salary basis can be met if there is a minimum guarantee (of at least the amount required by the professional exemption – 29 CFR 541.3(e)) even if the balance of pay is determined by time worked. See *Hood v. Mercery Health Care Arizona,* 23 F.Supp.2d 1125, 1128 (1997) – cited by defendant. Ms. Nixon states that she intended to see that no veterinarian received less than the minimum salary required (by state law effective January 1, 2000). However, that intent was not communicated to the veterinarians, was not acted upon by defendant's Board of Directors until 2001, and clearly was not part of the employment agreement until well after plaintiff left active employment in July 2000.

Nor can defendant establish that plaintiff was paid on a fee basis. Her compensation was not set by the number of animals she treated, but by the number of shifts she worked. 29 CFR 541.313(b) provides in part: "Payments based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payment on a fee basis." Thus unless plaintiff's position falls within a further exception of the salary or fee requirement, her position was non exempt.

Defendant claims that veterinarians are part of an exception to the salary requirement. Specifically, it asserts that veterinarians are included in the exception set forth in 29 CFR 541.314 for physicians, lawyers and teachers. That regulation reads as follows

> (a) A holder of a valid license or certificate permitting the practice of law or medicine or any of their branches, who is actually engaged in practicing the profession, or a holder of the requisite academic degree for the general practice of medicine who is engaged in an internship or resident program pursuant to the practice of his profession, or an employee employed and engaged as a teacher in the activity of imparting knowledge, is excepted from the salary or fee requirement. This exception applied only to the traditional professions of law, medicine, and teaching and not to employees in related professions which merely serve the professions.
>
> (b) In the case of medicine:

> (1)  The exception applies to physicians and other practitioners licensed and practicing in the field of medical science and healing or any of the medical specialties practiced by physicians or practitioners. The term physician means medical doctors including general practitioners and specialists, and osteopathic physicians (doctors of osteopathy). Other practitioners in the field of medical science and healing may include podiatrists (sometimes called chiropodists), dentists (doctors of dental medicine), optometrists (doctors of optometry or bachelors of science in optometry).
>
> (2)  Physicians and other practitioners included in paragraph (b)(1) of this section, whether or not licensed to practice prior to commencement of an internship or resident program, are excepted from the salary or fee requirement during their internship or resident program, where such a training program is entered upon after the earning of the appropriate degree required for the general practice of their profession.
>
> (c)  In the case of medical occupations, the exception from the salary or fee requirement does not apply to pharmacists, nurses, therapists, technologists, sanitarians, dietitians, social workers, psychologists, psychometrists, or other professions which service the medical professions.

Defendant argues that since veterinarians are not specifically excluded and since veterinarians practice veterinarian medicine they should be categorized as physicians and be excepted from the salary requirement. This argument fails because the regulations do not lend themselves to defendant's conclusions and such in interpretation would be expansive rather than narrow. In short, unless veterinarians are "plainly an unmistakenly within" the term physicians and other practitioners of medical science, the salary requirements applies to them.

The terms medicine or practicing medicine are commonly used to refer to the care and treatment of humans. Webster's Encyclopedic Unabridged Dictionary of the English Language 1996 defines medicine thusly:

> The art or science of restoring health or due physical condition as by means of drugs, surgical operations, appliances, or manipulations often divided into medicine proper, surgery and obstetrics.

Microsoft Encarta Online Encyclopedia (2001) defines medicine as follows:

> (Latin medicus, "physician") The science and art of diagnosing, treating and preventing disease and injury. Its goals are to help people live longer, happier, more active lives, with less suffering and disability.

In California separate statutes regulate the practice of medicine and the practice of veterinary medicine. The Medical Practice Act, Business & Professions Code §2000, et seq. regulate the

practice of medicine. The practice of medicine entails any mode of treating the sick or afflicted or prescribing for any disease or condition of a <u>person</u>. Business & Professions Code §2051.

The practice of veterinary medicine is governed by Business & Professions Code §4800, et seq. Veterinarian medical practice is limited to treatment of animals.

By the plain language of the regulation (29 CFR 314) the exclusion from the salary or fee test is limited to physicians and other practitioners of medicine, i.e. those persons licensed to treat humans. Further, if there were any question of the proper interpretation of the term "other practitioners of medicine", the inclusion in the regulation of osteopathy, podiatry, optometry and dentistry and the omission of veterinarians leads to the conclusion that veterinary medicine is not included in the definition. The doctrine of <u>expressio</u> <u>uxius</u> <u>est</u> <u>exclusivo</u> <u>alterius</u> instructs that where there is a limited inclusion, similar matters or categories not mentioned were intended to be excluded. *Plumbers & Steamfitters Local 150 v. Vertex Constr. Co.* 932 F2d 1443, 1449 (11th Cir. 1991). Each of the categories of medical practitioners included in 29 CFR 541.314 are in fields of medicine treating humans. Clearly, if veterinary medicine were intended to be included it would be specifically mentioned.

Also of aid in properly interpreting the regulation is the recent Supreme Court decision in *Circuit City Stores Inc. v Saint Clare Adams*, 532 US 105; 121 SCt 1302 (2001) There the court determined that the portion of the Federal Arbitration Act (9 USC §1) exempting "all contracts of employment of seaman, railroad employees, or any other class of workers engaged in foreign or enterstate commerce" was limited to and controlled by the specific words, i.e. seamen and railroad employees. Applying the rule of construction of <u>ejusdem</u> <u>generis</u> the court held that the general words are properly construed to include only objects similar to those set forth in the specific words. 532 US §114, 115. Thus, the phrase "physician and other practitioners licensed and practicing in the field of medical science" is limited . . . and controlled by the term physicians except and to the extent that specific inclusions (podiatrist, etc.) are specified. The term physician does not include veterinarians.

Defendant's reliance on *Federal Trade Commissions v. MTK Marketing,* 149 F3d 1036 (9th Cir 1998) is misplaced. There the court was construing a statute which explicitly stated that it was to

be liberally construed and found that the word "included" was not a word of limitation. The use of the work "include" in 29 CFR 541.314(b)(1) may not be a word of limitation, but the other practitioners included are exclusively professionals dealing with healing humans.

Defendant's citation to Judge Jamie Jacob-Mays's order in Richards v. UEAC (pg11 of defendant's points and authorities in support of motion) and the submission of the order for judicial notice is improper and carries no weight. First, the order is not a final or appealable judgment.[1] Second, even if it were a final judgment, trial court decisions in California are not legal precedent.

The common use of the term practice of medicine refers to the treatment of persons. The regulations only refer to professions dealing with the health of people. Even if one felt that there was some ambiguity as to whether or not the phase was meant to or not meant to include veterinarian, that in itself requires exclusion since veterinarians are thus not "plainly and unmistakenly within the terms" of the exclusion. Therefore, veterinarians, while professionals, must be paid on a salary or on fee basis in order to fit within the professional exemption of 29 CFR 541.3. Since, as shown above, plaintiff was not paid on either a salary or fee basis, defendant has not and cannot meet its burden of proving that plaintiff's employment was exempt from the overtime provisions of the FLSA, and the motion on that ground must be denied.

### B. State Overtime Laws Require Premium Pay

Effective January 1, 2000, the California Labor Code required that any work in excess of 8 hours a day be compensated at time and a half and any hours in excess of 12 hours be compensated at double time. Labor Code §510. The legislation provides that the Industrial Welfare Commission could establish exemptions for professional employees who customarily exercise discretion and independent judgment and receive a monthly salary of twice the minimum wage. Labor Code §515. That section further provided that IWC orders in effect in 1997, except as provided in §515, need not be changed. The pre-existing IWC orders define professionals and plaintiff does not dispute the fact that a veterinarian is a professional as defined in the applicable wage orders. However, effective January 1, 2000, §515 requires that all professionals had to be guaranteed a salary of at least twice

---

[1] To the extent the court would consider giving any weight to the order, the court should inquire as to the final resolution of the Richards' case.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT; Case No. C-01-20563 JF

7

the minimum wage in order to be exempt.

Similar to the federal exemption, state exemptions from overtime provisions are to be narrowly construed against the employer and limited to employee unmistakenly within their term. *Ramirez v. Yosemite Water Co.*, 62 CalApp4th 912, 920, 73 CalRptr2d 125 (1998) citing *Nordquist v. McGraw-Hill Broadcasting Co.*, 32 CalApp4rg 555, 38 CalRptr2d 221 (1995).

As with the FLSA claim, plaintiff did not receive a salary , but was paid only for the time worked. She was not guaranteed any amount per month and her pay was subject to deduction for missing a portion of the shift.

### C.   CONCLUSION

During the entire period of time in question plaintiff was not exempt form the overtime pay requirements of the FLSA and for the period of January 1, 2000 to July 9, 2000, she was not exempt from the overtime requirements of Labor Code §510.

Defendant's motion should be denied.

Dated: August 16, 2002                    WYLIE, MCBRIDE, JESINGER, SURE & PLATTEN

/s/

JOHN McBRIDE, Attorney for Plaintiff

p:\3000\03915\pnd\07.doc